AO 91 (Rev. 11/11)   Criminal Complaint

# UNITED STATES DISTRICT COURT
### for the
Eastern District of California

| | | |
|---|---|---|
| United States of America | ) | |
| v. | ) | |
| Robert Lee VASQUEZ | ) | Case No. 6:26-mj-00023-HBK |
| | ) | |
| | ) | |
| | ) | |
| | ) | |
| *Defendant(s)* | | |

## CRIMINAL COMPLAINT

I, the complainant in this case, state that the following is true to the best of my knowledge and belief.

On or about the date(s) of _____ June 14, 2026 _____ in the county of _____ Mariposa _____ in the _____ Eastern _____ District of _____ California _____, the defendant(s) violated:

| Code Section | Offense Description |
|---|---|
| 36 CFR 4.23(a)(1) | Driving under the influence of alcohol - incapable of safe operation |
| 36 CFR 4.14(b) | Carrying an open container of alcohol in a vehicle |
| CVC 16028(a) | Failure to show evidence of financial responsibility |
| 18 USC 3118 | Refusal to submit to chemical testing (implied consent) |

This criminal complaint is based on these facts:

See attached affidavit.

☑ Continued on the attached sheet.

_____
*Complainant's signature*

Heidi L. Edgecomb, Supervisory US Park Ranger
*Printed name and title*

Sworn to me in accordance with Fed.R.Crim.P. 4.1.

Date: _____ 06/15/2026 _____

_____
*Judge's signature*

City and state: _____ Yosemite, CA _____        Hon. Helena M. Barch-Kuchta, US Magistrate Judge
*Printed name and title*

## AFFIDAVIT IN SUPPORT OF A CRIMINAL COMPLAINT

### BACKGROUND OF AFFIANT

1. I, Heidi L. Edgecomb, further state, I am a Supervisory United States Park Ranger ("Ranger"), employed by the National Park Service ("NPS"). I have been employed by the NPS for approximately 19 years. I am a graduate of the Land Management Investigator Training Program and the Land Management Police Training Program at the Federal Law Enforcement Training Center in Glynco, Georgia, and the Seasonal Law Enforcement Training Program at Northern Arizona University in Flagstaff, Arizona. I have a Bachelor of Science degree in recreation management from Ferris State University. I have investigated a variety of crimes on NPS lands including traffic and driving violations, crimes against persons, crimes against property, and alcohol- and drug-related violations.

2. The facts of this criminal complaint are based on my personal observations, on my training and experience, as well as my consultation with other LEOs. This affidavit is intended to show merely that there is sufficient probable cause for the criminal complaint and does not set forth all my knowledge about this matter.

### JURISDICTION

3. The facts set forth in this criminal complaint occurred on June 14, 2026 within the geographic boundaries of Yosemite National Park, California. Yosemite National Park is an area of federally owned public land administered by the NPS. Yosemite National Park is an area of the special maritime and territorial jurisdiction of the United States as defined by Title 18 U.S.C. § 7 (3): "Special maritime and territorial jurisdiction of the United States

defined" and by Title 16 U.S.C. § 57: "Yosemite and Sequoia National Parks; exclusive jurisdiction of United States."

4. Yosemite National Park is located within Mariposa, Madera, Mono and Tuolumne Counties, all of which are located within the Eastern District of California.

### CHARGES

5. Based upon the facts set forth in this criminal complaint, I believe probable cause existed to believe that Robert Lee VASQUEZ ("VASQUEZ") violated the following laws of the United States on June 14, 2026 within Yosemite National Park:

   a. **Count 1**: Operating or being in actual physical control of a motor vehicle is prohibited while:

   Under the influence of alcohol, or a drug, or drugs, or any combination thereof, to a degree that renders the operator incapable of safe operation, in violation of Title 36 CFR 4.23(a)(1).

   b. **Count 2**: Carrying or storing a bottle, can or other receptacle containing an alcoholic beverage that is open, or has been opened, or whose seal is broken or the contents of which have been partially removed, within a motor vehicle in a park area is prohibited, in violation of Title 36 CFR 4.14(b).

   c. **Count 3**: Upon the demand of a peace officer pursuant to subdivision (b) or upon the demand of a peace officer or traffic collision investigator pursuant to subdivision (c), every person who drives a motor vehicle upon a highway shall provide evidence of financial responsibility for the vehicle that is in effect at the time the demand is made, in violation of California Vehicle Code 16028(a).

d. **Count 4**: Whoever, having consented to a test or tests by reason of subsection (a), refuses to submit to such a test or tests, after having first been advised of the consequences of such a refusal, shall be denied the privilege of operating a motor vehicle upon the special maritime and territorial jurisdiction of the United States during the period of a year commencing on the date of arrest upon which such test or tests was refused, and such refusal may be admitted into evidence in any case arising from such person's driving while under the influence of a drug or alcohol in such jurisdiction, in violation of 18 USC 3118.

## PROBABLE CAUSE

6. On June 14, 2026 at approximately 2:40 PM, I heard a Mariposa Grove traffic ranger notify Yosemite Dispatch that the male driver of white Honda Civic with California license plate 6TRB451 had been smoking marijuana and appeared impaired when he spoke to the rangers. He was reported to have glassy eyes and described as "incoherent" while speaking to the rangers.

7. I began driving southbound on Wawona Road from the Bishop Creek area, monitoring traffic as I drove. Approximately ½ mile north of Wawona Campground I found a white Honda Civic bearing the license plate reported by the rangers traveling northbound. I noted the vehicle was traveling very slowly and was driven by a man. I turned my vehicle around and followed the white Honda.

8. As I followed the vehicle, I paced it for approximately 2 ½ miles until I found a straight, flat turnout to stop the vehicle in. The vehicle traveled at approximately 25 miles per hour for

the duration.  This is 10 miles under the speed limit.  I also watched as the vehicle crossed over the white fog line of the road by one full tire width twice and noted the vehicle was weaving between the fog and center line of the roadway. Based on my experience, driving under the speed limit, crossing lane lines, and weaving within a lane can be caused by impairment by drugs or alcohol.

9.  When I activated my vehicle's lights to conduct a vehicle stop, the white Honda drifted into the turnout, failing to signal his turn.  I approached the vehicle and upon reaching the rear bumper I immediately smelled marijuana coming from inside the vehicle.  The male driver, later identified as Robert Lee VASQUEZ, already had the driver's window rolled down.  I explained to VASQUEZ I was stopping him because he had been seen smoking marijuana at South Entrance, I advised him I smelled marijuana in his vehicle, and told him he was driving under the speed limit.  He said "Just a little, I did…I don't smoke."  I questioned him, saying "you didn't smoke at all?" to which he replied "no." I asked why I had rangers saying they had seen him smoke. He said "I don't smoke."  I asked again and he said "I didn't see no rangers saw me smoking at all."  I told him they had seen him smoking, and asked for his driver license, registration and insurance.  I confirmed he said he had a little marijuana in the vehicle and asked if he had any other drugs. He said no, and that the marijuana was in a "concealed container."

10. VASQUEZ produced his driver license, an insurance card for two vehicles that didn't match the one he was driving and had expired in 2019, and an expired registration slip.  Throughout this initial contact, VASQUEZ was looking in the consoles, glove box, and other areas of the

passenger compartment seemingly for his insurance and registration paperwork. He did so in a mindless, fidgety way, as if nervous and distracted.

11. I asked if he had any alcohol in the vehicle. He said "no, it's just in the ice chest. Just water…and then…we were just going up to the waterfalls." I asked where the marijuana was. He said "it's in a concealed container." I told him I could smell it, which meant it had been opened. He denied having any open marijuana in the vehicle.

12. VASQUEZ then began fidgeting and removed his seatbelt. He looked nervous. I asked him if we was nervous. He said "no, I was just driving, and then I don't know the speed limit here, it's my first time." I told him he had passed a couple of signs. He said "it said 25, the first time I saw it was 25." I told him he had passed two 35 mph signs since he had seen the 25 sign. VASQUEZ continued to look for his registration and insurance. He said he had his insurance proof on his phone, but continued to dig through his vehicle. I waited for several moments and finally told him to stop looking. I confirmed the information he had told me thus far and then explained I was going to have him step out of the vehicle. He continued to go through random papers and places presumably looking for the insurance while I did this.

13. Ranger Hunter Barry arrived on scene to assist me. He began conducting Standardized Field Sobriety Tests with VASQUEZ while I had Yosemite Dispatch run him and his passenger's license and ID.

14. I watched Ranger Barry begin the tests. I heard VASQUEZ say he had a concussion in March and was having that treated by "therapy and the chiropractor." While Ranger Barry conducted the Horizontal Gaze Nystagmus test I stood approximately 10 feet away. I could see that VASQUEZ was demonstrating lack of smooth pursuit in both eyes, distinct and

sustained nystagmus at maximum deviation in both eyes, and onset of nystagmus prior to 45 degrees in his left eye.  I could not see his right eye clearly on this test.  I saw a total of 5 clues demonstrated.

15. Ranger Barry asked VASQUEZ if he had anything to drink. He denied this. He said he had about "a half a cup" of Crown Royal about midnight the previous night. Ranger Barry asked if VASQUEZ took any prescription drugs. He said he did not, but then said he was prescribed Baclofen, stating it was a muscle relaxer which he had taken at 6:30 or 7 AM this morning.  Ranger Barry asked if VASQUEZ if he had any medical problems. He said he had problems with his knees, but said he could take 9 steps down and 9 steps back.  He said he generally walked around places like the grocery store and was a painter by trade.

16. I watched as Ranger Barry instructed and demonstrated the Walk-and-Turn test. When VASQUEZ performed this test I noted he failed to touch heel-to-toe more than once on the first pass, displayed an improper turn by taking a 10th step and then pivoting on both feet, and again missed touching heel-to-toe on the return pass.  I saw a total of 2 clues on this test.

17. I watched as Ranger Barry instructed and demonstrated the One Leg Stand test.  VASQUEZ said he could do the test.  VASQUEZ did not display any clues on this test but showed marked shaking while performing the test.

18. Ranger Barry informed me he had seen 6 clues on the Horizontal Gaze Nystagmus test, which indicated impairment. He said he saw two or three clues on Walk and Turn, explaining he wasn't sure if VASQUEZ had taken an incorrect number of steps because the steps were wrapped into the improper turn.  Ranger Barry confirmed he smelled alcohol or something

"funky" coming from VASQUEZ's breath.  Ranger Barry said based on SFST's he didn't think VASQUEZ was able to safely drive.

19. I then asked VASQUEZ to stand up so I could check his eyes.  I checked for lack of convergence which he did not demonstrate.  VASQUEZ again said he hadn't had any alcohol since midnight but confirmed he had taken Baclofen at 7 or so in the morning.  VASQUEZ provided a preliminary breath test which did not confirm alcohol on his breath.

20. During a search of the vehicle, pursuant to the mobile conveyance exception, I found an opened bottle of Crown Royal in an ice chest in the back seat of the vehicle containing approximately 1" of liquor. The ice chest was accessible to the driver and passenger.  I also found a paint can containing 112.5 grams of marijuana on the back seat of the vehicle.

21. After arresting VASQUEZ I explained to him that due to my suspicion he was impaired by drugs I would be requesting a blood sample for testing. I asked if he would give that voluntarily. VASQUEZ replied saying "I smoke marijuana, like, on a daily basis. Yeah, just because of all of my issues so I don't take like any oxy's or anything like that." I asked again if he would provide that voluntarily and he "yeah, that's fine, yeah."  Ranger Barry transported VASQUEZ to Yosemite Valley to have the blood sample drawn and advised me later that VASQUEZ had refused to voluntarily provide the blood sample.    I applied for and was granted a search warrant and a blood draw was conducted at John C. Fremont Hospital.

**CONCLUSION**

Based on the forgoing facts of this affidavit, I believe probable cause existed for the arrest of Robert Lee VASQUEZ on June 14, 2026, for driving a vehicle while under the influence of drugs to a degree which renders the driver incapable of safely operating a vehicle, carrying an

PAGE **7** OF **8**

open container of alcohol in a motor vehicle, failing to show proof of financial responsibility for a vehicle, and refusing to submit to implied consent chemical testing when arrested for suspicion of driving under the influence. within Yosemite National Park.

Respectfully submitted,

Heidi L. Edgecomb
Supervisory United States Park Ranger
National Park Service

June 15, 2026
Sworn to me in accordance with Fed.R.Crim.P. 4.1:

The Honorable
Helena M. Barch-Kuchta
United States Magistrate Judge

Approved as to form by:

Christopher Dell Isola
US Park Ranger (Rule 180)